IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

CARLISA MERRIWEATHER,

      Plaintiff,

v.                                   CIVIL ACTION NO. 1:21-00391

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the court is defendant's motion to dismiss and for summary judgment.  ECF No. 55.  For the reasons explained below the motion is **GRANTED**.

### I.   Background

This is an employment discrimination case brought against the United States Commissioner of Social Security ("SSA").  <u>See</u> ECF No. 23.  The alleged discrimination occurred in the Welch, West Virginia, social-security field office, where plaintiff Carlisa Merriweather was allegedly subjected to disparate treatment and harassment because of her race, disabilities, and gender.  <u>See id</u>.  She also claims she was subjected to reprisal for participating years earlier in unrelated employment proceedings against her office supervisor.  <u>See id</u>.

According to Ms. Merriweather's complaint, she is African American and suffers from various physical disabilities, including lupus, iron deficiency, degenerative disk disease, and osteoarthritis.  See id. at ¶¶ 9, 28-30.  She has worked as a "Title II Claims Specialist" in the Welch office since 2013.  See id. at ¶¶ 8, 13.  In August 2019, she applied for a promotion from that position to "Claims Technical Expert."  See id. at ¶¶ 39, 54.  A Claims Technical Expert "is responsible for developing and adjudicating the most complex, non-routine claims under Title II and Title XVI of the Social Security Act."  ECF No. 56-1 at 5.

Another claims specialist from the Welch office also applied for the promotion—Kellie Blankenship, "who is white."  ECF No. 23 at ¶ 46.  To apply, both candidates were required to complete "SSA-45" forms, which serve as standardized resumes listing the candidates' work experience, education, and other relevant information.  See ECF No. 56-1 at 3.  Before completing her form, Ms. Merriweather says that she asked the supervisor of the Welch field office, Sammy Smith, for "duty time" to work on it.  See ECF No. 23 at ¶ 41.  Mr. Smith allegedly denied her request but granted a similar request for Ms. Blankenship.  See id. at ¶¶ 44, 48-53.  Mr. Smith also allegedly helped Ms. Blankenship complete her form but did not help Ms. Merriweather.  See id.  However, Ms. Merriweather received help from Cindy

2

Mann, an SSA supervisor from the Bluefield, West Virginia, field office who held the same position as Mr. Smith.  See ECF No. 57-1 at ¶ 34.

After completing these forms, the job candidates were to submit them to the district manager, Melinda Groom, who, like Ms. Merriweather, is an African-American female.  See ECF No. 57-1 at ¶ 37; ECF No. 56-1 at 8.  As the district manager, Ms. Groom was the SSA official in charge of the hiring decision.  See ECF No. 57-1 at ¶ 37.  Three eligible candidates applied.  See id.  Per Ms. Groom's usual practice, she asked each candidate's supervisor for an assessment and recommendation of the candidate.  See id.

In response, Mr. Smith, who supervised both Ms. Merriweather and Ms. Blankenship, submitted standardized "Assessment and Recommendation" forms for each of them.  See ECF No. 55-2.  For Ms. Merriweather, he checked a box for "Not recommended" for the position.  See id. at 13.  But for Ms. Blankenship, he checked a box that "Highly recommended" her for the position.  See id. at 16.

This form requested a written justification from Mr. Smith for each of his recommendations.  See id. at 13, 16.  He highly recommended Ms. Blankenship for the job purportedly because of her expertise in the field:

> [Ms. Blankenship] has also cross-
> trained as a Title II claims specialist.
> Besides being able to take and adjudicate
> SSI disability and aged claims, she has
> skills and knowledge to take and adjudicate
> Title II disability, Retirement, Survivor,
> Auxiliary, Medicare and End Stage Renal
> Disease claims.  She is also able to process
> the majority of Title II post entitlement
> actions.  This additional knowledge and
> skills make her well rounded and an
> excellent candidate for the TE position.

Id. at 16.  On the other hand, he explained that he did not

recommend Ms. Merriweather for the promotion because of her

limited expertise:

> [Ms. Merriweather] is able to process
> her routine case work with little to no
> assistance, but still needs assistance with
> the more complicated workloads[.]  She has a
> tendency to get the other T2 CS to process
> workloads she is not familiar with instead
> of taking the initiative to learn how to do
> it herself.  [Ms. Merriweather] is [a] good
> technician and with more experience and
> self-development she would make an excellent
> candidate for the TE position.

Id. at 13.  These recommendations were later reviewed by Ms.

Groom, who selected Ms. Blankenship for the promotion.  See ECF

No. 57-1 at ¶¶ 44-45.

   After being passed over for the promotion, Ms. Merriweather

believed she had been discriminated against and on August 28,

2019, she contacted an EEO Counselor alleging that Mr. Smith

discriminated against her during the application process.  See

ECF No. 17-1 at 2, ¶ 7.  In addition to claims related to the

4

promotion application, she complained of, among other things,
prior instances of alleged discrimination by Mr. Smith dating
back as far as six years.  See id. at 14-22.

The EEO Counselor, after assessing Ms. Merriweather's
claims, approved her to file a formal Equal Employment
Opportunity complaint, see id. at 25, which, a short time later,
she filed with the SSA's Office of Civil Rights and Equal
Opportunity, see ECF No. 55-6.  In that EEO complaint, she
alleged that Mr. Smith, on mostly unspecified dates, (1)
subjected her to disparate treatment during the application
process because he denied her duty time to complete her SSA-45
form and did not help her with it, despite giving time and
assistance to Ms. Blankenship; (2) denied Ms. Merriweather a
reasonable accommodation for her disabilities by denying her a
space heater for her office, (3) touched her inappropriately and
made sexual remarks to her, (4) denied her leave, and (5)
assigned her more claims to process than other employees.  See
id.  The EEO complaint also included other allegations that she
does not raise in this action and are, therefore, not relevant
here.  See id.

Ms. Merriweather later clarified the dates of these alleged
incidents: (1) the disparate treatment related to the promotion
application occurred between August 5-22, 2019, see ECF No. 23
at ¶¶ 41, 52, (2) the denial of the space heater occurred

5

sometime in March 2019, id. at ¶¶ 32-33, (3) the inappropriate touching and comment incident occurred on January 17, 2017, id. at ¶ 27, (4) the denial of leave occurred in September 2013, id. at ¶¶ 15-16, 18, and (5) the disproportionate assignment of claims on October 8, 2019, see id. at ¶ 55.

The Office of Civil Rights and Equal Opportunity summarily dismissed Ms. Merriweather's March 2019 denial of reasonable accommodation claim and September 2013 denial of leave claim because Ms. Merriweather did not contact an EEO Counselor about those allegations until August 28, 2019, despite being statutorily required to do so within 45 days of any alleged discrimination.  See ECF No. 17-1 at 1, ¶ 5.  An administrative law judge then reviewed the remaining claims and granted summary judgment for the SSA.  See ECF No. 56-1 at 1-2.

Following those administrative proceedings, on July 8, 2021, Ms. Merriweather filed this action asserting claims of discrimination, harassment, and reprisal under Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act.  See ECF Nos. 1 and 23.  Her claims arise out of six separate allegations:  (1) the September 2013 denial of leave, (2) the January 2017 inappropriate touching incident, (3) the March 2019 denial of a space heater, (4) the August 2019 disparate treatment during the promotion application process, (5) a

failure to receive that promotion, and (6) and the October 2019 disproportionate assignment of claims.  See ECF No. 23.

As to three of these allegations, the SSA previously moved, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss, arguing that Ms. Merriweather failed to exhaust her administrative remedies:  (1) the September 2013 denial of leave, (2) the March 2019 denial of a reasonable accommodation, and (3) the failure-to-promote.  See ECF No. 17.  Regarding the September 2013 and March 2019 allegations, the SSA argued that Ms. Merriweather failed to timely contact an EEO Counselor, as the Office of Civil Rights and Equal Opportunity previously found.  See ECF No. 18 at 1-2.  On the other hand, as to the failure-to-promote allegation, the SSA argued that the allegation exceeded the scope of allegations raised during Ms. Merriweather's administrative proceedings and that she is therefore barred from raising the allegation in this civil action.  See id. at 2.

This court agreed with the SSA regarding the alleged 2013 denial of leave and 2019 denial of reasonable accommodation allegations.  The court, therefore, granted the SSA's motion to dismiss all claims arising from those allegations.  See ECF No. 39.  However, the court denied the motion as to the claims related to Ms. Merriweather's failure-to-promote allegation, reasoning that the SSA presented insufficient documentation for

the court to determine whether Ms. Merriweather properly raised and exhausted that allegation during the administrative proceedings.  See id.  Nevertheless, the court based that ruling on the record before it at the time and held the issue open for later consideration.  See id.

After that decision, four of Ms. Merriweather's claims remain:  (1) the January 2017 sexual harassment incident, (2) the August 2019 disparate treatment in the application process, (3) the failure-to-promote, and (4) the October 2019 disproportionate-workload claim.  Ms. Merriweather bases her claims on:  (1) racial discrimination, (2) gender discrimination, (3) disability discrimination, and (4) reprisal.

The SSA moves to dismiss or for summary judgment on these claims, arguing that the court lacks subject-matter jurisdiction over some of the allegations and that Ms. Merriweather failed to satisfy her burden of production for each of her claims.  See ECF No. 55.  Along those lines, the motion raises two distinct challenges:  (1) to the administrative exhaustion of certain allegations, and (2) to the merits of the four counts of Ms. Merriweather's complaint.  See id.

## II.  Legal Standard

A motion under Rule 12(b)(1) challenges a court's subject-matter jurisdiction over the pending dispute.  See Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).  A Rule 12(b)(1)

8

motion can be presented in two ways.  First, the movant may contend that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based."  Adams, 697 F.2d at 1219.  When presented with this contention, the court assumes that the allegations in the complaint are true and affords the plaintiff the same procedural protection she would receive under Rule 12(b)(6).  See id.  Second, the movant may raise a factual attack against the complaint, alleging that the jurisdictional allegations of the complaint are not true.  See id.

Then, a court "is to regard the pleadings' allegations as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citing Adams, 697 F.2d at 1219).  The party asserting subject-matter jurisdiction carries the burden of establishing it.  See Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999).  The court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  Id.

On the other hand, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A party that moves for summary judgment
bears the initial burden of demonstrating that no genuine issue
of material fact exists.  See Celotex Corp. v. Catrett, 477 U.S.
317, 323 (1986).  "A fact is 'material' if proof of its
existence or non-existence would affect disposition of the case
under applicable law.  An issue of material fact is 'genuine' if
the evidence offered is such that a reasonable jury might return
a verdict for the non-movant."  Sedar v. Reston Town Ctr. Prop.,
LLC, 988 F.3d 756, 761 (4th Cir. 2021) (quoting Wai Man Tom v.
Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020)).

Once the moving party establishes this initial burden, "the
nonmoving party must then go beyond the pleadings and affidavits
and show that there are 'specific facts showing that there is a
genuine issue for trial.'"  Shaw v. Foreman, 59 F.4th 121, 129
(4th Cir. 2023) (quoting Celotex, 477 U.S. at 324).  To show a
genuine issue for trial, the nonmoving party must present more
than "[t]he mere existence of a scintilla of evidence[.]"  Id.
(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252
(1986)).  This means "conclusory allegations or denials, without
more, are insufficient to preclude granting [a] summary judgment
motion."  Id. (quoting Wai Man Tom, 980 F.3d at 1037).

### III. Discussion

First, the court will address the SSA's challenge to the
administrative exhaustion of two of Ms. Merriweather's

10

allegations:  (1) the January 2017 sexual harassment and (2) the failure-to-promote.  The court will then turn to the SSA's second challenge and assess Ms. Merriweather's four counts in light of the remaining, viable allegations.

A.  *Administrative Exhaustion*

    1.  *January 2017 Sexual Harassment Allegation*

Ms. Merriweather alleges that "[o]n January 17, 2017, [Mr. Smith] inappropriately touched [her] back and made inappropriate comments about stroking her."  ECF No. 23 at ¶ 27.  While not entirely clear, this allegation seems to form part of a hostile—work-environment claim; Ms. Merriweather recites the elements of a gender-based hostile-work-environment claim, see ECF No. 23 at ¶¶ 61-62, and this is her only allegation that supports that claim.

Claims of sexual harassment, as with other claims of discrimination, must be reported to an EEO Counselor within 45 days of the alleged harassment:  "A federal employee who believes herself to be aggrieved must initiate contact with a counselor within forty-five days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within forty-five days of the effective date of the action."  Khoury v. Meserve, 85 F. App'x 960 (4th Cir. 2004) (per curium) (citing 29 C.F.R. § 1614.105(a)(1)).  This requirement is imposed on federal employees as part of the

11

requirement that they exhaust all administrative remedies before suing for discrimination.  See, e.g., Dipaulo v. Potter, 733 F. Supp.2d 666, 671-672 (M.D.N.C. 2010) (citing 29 C.F.R. § 1614.105(a)(1)).

The SSA argues that Ms. Merriweather failed to contact an EEO Counselor about this allegation within the 45-day window. The SSA, therefore, argues that, under Rule 12(b)(1), the court lacks subject-matter jurisdiction over all claims arising from this allegation.  See ECF No. 56-1 at 10.

However, Rule 12(b)(1) is not the correct procedural vessel for the SSA's challenge; "Although exhaustion is imperative, it is not jurisdictional."  Walton v. Harker, 33 F.4th 165, 175 (4th Cir. 2022).  Because contact with the EEO Counselor is an administrative requirement that does not implicate the court's subject-matter jurisdiction, the court will consider this argument as part of the SSA's motion for summary judgment and apply that standard.  See, e.g., Beene v. Delaney, 70 F. App'x 486, 488 (10th Cir. 2003) ("[F]orty-five day time limit . . . is not a jurisdictional requirement for filing suit under Title VII . . . [but] we conclude that defendant was entitled to summary judgment under Rule 56, and we affirm the dismissal of plaintiff's Title VII claims on that basis."); see also Harker, 33 F.4th at 175 (affirming district court's dismissal despite it

12

incorrectly considering the 45-day notice requirement a subject-matter jurisdiction issue).

With the applicable standard clarified, the court turns to the merits of the SSA's argument that Ms. Merriweather failed to contact an EEO Counselor within 45 days.  The parties do not dispute that she first contacted an EEO Counselor on August 28, 2019, more than two years after Mr. Smith allegedly stroked her back in January 2017.  See ECF No. 17-1; ECF No. 55-1 at 14. Instead, faced with this undisputed evidence, Ms. Merriweather suggests that "[t]he inappropriate comments and touching by Mr. Sam Smith in 2017 should be used as background evidence that shows a pattern of discrimination and harassment."  ECF No. 57 at 1.  The court rejects this suggestion.

It is true that in cases of ongoing discrimination, the 45-day time limit may begin on the day of the "last discriminatory act."  See Jakubiak v. Perry, 101 F.3d 23, 26 (4th Cir. 1996). This theory is considered part of the "continuing violation doctrine."  See, e.g., Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114-116 (2002).  But the doctrine does not apply here.

To proceed under a continuing-violation theory in an employment-discrimination action, "a plaintiff must first show that an actual violation occurred within the requisite limitations period."  Blount v. Dept. of Health and Human Serv., 400 F. Supp.2d 838, 842 (D. Md. 2004) (citing Tinsley v. First

13

Union Nat'l Bank, 155 F.3d 435 (4th Cir. 1998)).  Thus, the
first "critical question" in a potential continuing-violation
situation is "whether any present violation exists."  Id.
(quoting United Air Lines, Inc. v. Evans, 431 U.S. 553, 558
(1977)).

In this case, that initial question is answered in the
affirmative because Ms. Merriweather presented timely, current
claims to an EEO counselor:  the claims related to her August
2019 promotion application and October 2019 disproportionate
workload.

A timely presented claim, however, is not the only
requirement for application of the continuing-violation
doctrine.  The acts that occurred outside the EEO charge filing
period must be "plausibly or sufficiently related" to the acts
that occurred within the filing period.  See Williams v. Silver
Spring Volunteer Fire Dept., 86 F. Supp.3d 398, 411 (D. Md.
2015) (quoting Lewis v. Norfolk S. Corp., 271 F. Supp.2d 807,
812 (E.D. Va. 2003)).  In other words, the otherwise untimely
claim must be part of the same pattern as the timely claim, and
the claims cannot be discrete:  "The continuing-violation
doctrine applies to claims based upon a defendant's ongoing
policy or pattern of discrimination rather than discrete acts of
discrimination."  Hill v. Hampstead Lester Morton Court Partners
LP, 581 F. App'x 178, 181 (4th Cir. 2014) (per curium) (quoting

14

Holland v. Washington Homes, Inc., 487 F.3d 208, 219–20 (4th Cir. 2007)).

A pattern may be established through a hostile-work-environment claim, which by "[t]heir very nature involve[] repeated conduct" and unlawful employment practices that may "occur[ ] over a series of days or perhaps years." Nat'l R.R. Passenger Corp., 536 U.S. at 115. Disparate treatment allegations, on the other hand, are discrete and do not support a continuing-violations theory: "Because a disparate treatment claim takes issue with discrete acts of discrimination, plaintiffs cannot rely on a continuing violations theory to cure the untimeliness." Martin v. Merck & Co., Inc., 446 F. Supp.2d 615, 632 (W.D. Va. 2006) (citing Williams v. Giant Food, Inc., 370 F.3d 423, 429 (4th Cir.2004)).

In this case, Ms. Merriweather labels each of her discrimination counts as "harassment and disparate treatment[,]" see ECF No. 23, possibly in an effort to establish a case of ongoing harassment and save the otherwise untimely allegations. However, despite those conclusory labels, the only allegation that supports a harassment claim is this sexual harassment allegation; her timely 2019 allegations support only disparate treatment claims.

A disparate treatment claim arises when an employer treats an employee differently than similarly situated employees

15

because of race, gender, or other protected classification. See, e.g., Barreto v. SGT, Inc., 826 F. App'x 267, 270-271 (4th Cir. 2020) (per curium). That is precisely what Ms. Merriweather alleges in her timely 2019 allegations: she asserts that "Mr. Smith . . . gave Ms. Blankenship preferential treatment" during the application process, see ECF No. 57 at 8, and that Mr. Smith "treated [her] differently [than] others not in her protected class" by assigning her a disproportionate number of claims, id. at 9.

Because these timely disparate treatment allegations are discrete from the untimely sexual harassment allegation, they do not support a continuing-violation theory; when a plaintiff alleges discrete theories and acts of discrimination "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Nat'l R.R. Passenger Corp., 536 U.S. at 113.

The court, therefore, grants summary judgment for the SSA on all claims arising from this 2017 allegation and will not consider it when addressing the four counts of Ms. Merriweather's complaint.

### 2. *Failure-to-Promote Allegation*

The SSA renews its prior argument from its 12(b)(6) motion, arguing that Ms. Merriweather did not raise her failure-to-promote allegation during her administrative proceedings. This

16

time, she moves to dismiss under Rule 12(b)(1) for lack of
subject-matter jurisdiction.

Again, while administrative exhaustion is a mandatory
requirement, it is not a jurisdictional one.  See Harker, 33
F.4th at 175.  The court will, therefore, consider this argument
as part of the SSA's motion for summary judgment.

If the SSA is correct that Ms. Merriweather did not raise
her failure-to-promote claim in her EEO complaint, she cannot
raise it here; the scope of a plaintiff's EEO charge defines the
scope of any ensuing lawsuit.  See, e.g., Bryant v. Bell Atl.
Maryland, Inc., 288 F.3d 124, 132 (4th Cir. 2002).  In other
words, "the factual allegations made in formal litigation must
correspond to those set forth in the administrative charge."
Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005)
(citing 42 U.S.C. § 2000e-5(e)(1)).

However, the factual allegations in the administrative
charge need not be spelled out in great detail.  Rather,
allegations that "can reasonably be expected" to follow from an
administrative charge may be brought in an ensuing lawsuit.
Chisholm v. United States Postal Serv., 665 F.2d 482, 491 (4th
Cir. 1981).  Therefore, "those discrimination claims stated in
the initial charge, those reasonably related to the original
complaint, and those developed by reasonable investigation of
the original complaint may be maintained in a subsequent Title

17

VII lawsuit." _Evans v. Tech. Applications & Servs. Co._, 80 F.3d 954, 963 (4th Cir. 1996) (citing _King v. Seaboard Coast Line R.R._, 538 F.2d 581, 583 (4th Cir. 1976)).

In this case, the SSA acknowledges that, in Ms. Merriweather's administrative proceedings, she raised the allegations of disparate treatment related to the promotion application process, but the SSA argues that she did not specifically challenge the SSA's failure-to-promote her.  _See_ ECF No. 56-1 at 12.  Rather, the SSA insists that she raised the failure-to-promote issue not as an act of disparate treatment in and of itself, but rather, as the alleged harm caused by the disparate treatment during the application process.  _See id_. at 13.

As stated above, the SSA raised this same argument in support of its earlier motion to dismiss, _see_ ECF No. 18 at 5-6, which this court denied, _see_ ECF No. 39.  At that time, the SSA presented insufficient evidence in support of its argument.  It asked the court to determine the scope of the EEO complaint but did not offer the complaint for the court's consideration. Instead, it offered (1) a letter indicating the acceptance of that complaint from the SSA's Office of Civil Rights and Equal Opportunity, _see_ ECF No. 17-1 at 4-12, and (2) and an EEO counselor's pre-complaint report on Ms. Merriweather's allegations, _see id_. 15-26.

18

In denying that motion, the court explained that those documents did not necessarily support the SSA's position:  the letter accepting the complaint specifically acknowledged a "failure to promote" claim, see id. at 4, as did the EEO counselor's report, see id. at 16-18.  The court, therefore, denied the motion "on this record" and held the issue open for later consideration, should the SSA present sufficient evidence showing that this lawsuit exceeded the scope of the EEO complaint.  See ECF 39 at 10.

The SSA presents additional evidence with this motion:  the EEO complaint and an "Investigative Affidavit" related to it. See ECF No. 55-7.  Even so, these documents are consistent with the documents before the court when it denied the previous motion and do not change the court's decision.

The EEO complaint lists "Promotion" as one of Ms. Merriweather's claims, and the complaint also lists, as part of her requested remedy, the income she would have received had she been promoted. See ECF No. 55-6 at 2.  Likewise, the Investigative Affidavit includes questions aimed specifically at Ms. Merriweather's claim of "failure to promote."  See ECF No. 55-7 at 9.  With these references to the failure-to-promote claim, it could "reasonably be expected" that the claim would arise during the investigative process.

19

For this reason, the EEO complaint and related documents satisfy the three requirements that (1) the allegation be raised in the EEO complaint, (2) be reasonably related to allegations in it, or (3) be developed by further investigation.

The court, therefore, denies the SSA's motion to dismiss claims arising from the failure-to-promote allegation and will consider it when analyzing the four counts of Ms. Merriweather's complaint.

**B.   *Ms. Merriweather's Four Counts***

With Ms. Merriweather's properly exhausted allegations established, the court now turns to the four counts of discrimination and reprisal arising from her remaining allegations of disparate treatment:  (1) Mr. Smith showing favoritism to Ms. Blankenship during the application process, (2) the failure-to-promote, and (3) Mr. Smith assigning disproportionate claims to Ms. Merriweather.

**1.   *Count I:  Gender Discrimination***

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1).  "A plaintiff pursuing a claim under Title VII may either offer direct evidence of discrimination or, using indirect evidence, she may rely on the burden shifting

20

framework that was adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)." Coleman v. Whitley, No. 21-1181, 2022 WL 16630570, at *1 (4th Cir. Nov. 2, 2022).

In this instance, Ms. Merriweather offers no direct evidence of discrimination and must rely on the McDonnell Douglas burden-shifting framework. Under this framework, she "must carry the initial burden under the statute of establishing a prima facie case of [gender] discrimination." McDonnell Douglas, 411 U.S. at 802. She fails to meet her burden.

A plaintiff can establish a prima-facie case of disparate treatment by proving that "(1) she is a member of a protected class, (2) she was performing her job satisfactorily, (3) an adverse employment action occurred, and (4) the circumstances suggest an unlawfully discriminatory motive." Noonan v. Consol. Shoe Co., Inc., No. 21-2328, 2023 WL 6885002, at *3 (4th Cir. Oct. 19, 2023) (quoting Spencer v. Virginia State Univ., 919 F.3d 199, 207 (4th Cir. 2019)). Ms. Merriweather falls short on perhaps the most important element of a discrimination claim: the existence of an unlawfully discriminatory motive. Her allegations do not support a finding that the SSA's employment actions were based on her gender.

First, Ms. Blankenship, the person Ms. Merriweather alleges received preferential treatment during the promotion application

and selection process, is also a female.  Those allegations, therefore, cannot establish discrimination based on sex:  "A plaintiff cannot establish a claim of disparate treatment by referencing a comparator of the same protected class."  Floyd v. United States Dep't of Homeland Sec., No. RDB-09-0735, 2009 WL 3614830, at *8 (D. Md. Oct. 27, 2009).

Likewise, Ms. Merriweather produces nothing showing that her gender contributed to her allegedly being assigned disproportionate claims.  She alleges that this incident occurred on one specific day:  October 8, 2019.  See ECF No. 23 at ¶ 55.  She does not allege that a male colleague worked that day or that he received less claims; indeed, she merely alleges that Mr. Smith required her to "take five claims . . . while other staff were assigned to take three to four . . . ."  Id.  The only evidence regarding who those "other staff" members may have been is offered by the SSA, which puts forth Mr. Smith's testimony that Ms. Merriweather was the only claims specialist working that day.  See ECF No. 55-2 at ¶ 8.

Thus, the summary-judgment burden shifts to Ms. Merriweather to produce evidence demonstrating a genuine issue of material fact for trial.  In this instance, this means evidence of a male colleague treated differently than her.  But she puts forth nothing, not even her own testimony.

When asked at her deposition if the only other Title II Claims Specialist, Patrick Greene, was at work that day, she responded, "I really don't remember.  I'm not for sure."  ECF 55-1 at 25.  And when asked more specifically why she believes she was assigned more claims because of her gender she responded, "Because I was the only one that was assigned them, I guess."  Id. at 26.

Despite offering no evidence, she conclusively insists in her brief that she was "treated differently [than] others not in her protected class[.]"  ECF 57 at 9.  Instead of carrying her burden of production, she insists that the credibility of Mr. Smith's testimony presents a genuine issue of material fact:

> To the extent [the SSA] argues that her inability to remember means that she agrees that she was the only Title II specialist working that day, that argument must be rejected . . . . Mr. Smith's self-serving statement is not to be taken at face value . . . As such, there is a genuine issue of material fact on whether [Ms. Merriweather] was treated differently [than] others not in her protected class, and this issue should be resolved at trial.

ECF No. 57 at 9.  This argument misses the mark.

The issue is not whether Ms. Merriweather agrees with Mr. Smith's testimony; the issue is that she has produced absolutely no evidence to rebut it, despite bearing the burden to do so. Should this claim proceed to trial, the jury would be left with only Ms. Merriweather's unsupported "guess" that Mr. Smith

23

assigned her five claims because of her gender.  Consequently, there is no genuine issue of material fact for trial:  "While all inferences must be viewed in a light most favorable to the non-moving party, [a party] 'cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another.'"  Seastrunk v. United States, 25 F. Supp.3d 812, 815 (D.S.C. 2014) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).  Ms. Merriweather's guess that her gender affected her assignment of claims is just that:  mere speculation.

For these reasons, Ms. Merriweather fails to establish the discriminatory-motive element of a prima-facie disparate-treatment claim based on her gender, and the court grants the SSA's motion for summary judgment on this count.

### 2.  *Count II:  Racial Discrimination*

As in cases of discrimination based on sex, Title VII makes it unlawful for an employer to "discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's . . . race . . . ."  42 U.S.C. § 2000e-2(a)(1).

In this case, Ms. Merriweather offers the same factual allegations in support of her racial discrimination claim as she did for her gender discrimination claim.  For those allegations to establish a prima-facie case of racial discrimination, Ms.

24

Merriweather must prove that (1) she belongs to a protected
class; (2) her employer took an adverse employment action
against her; (3) she had been fulfilling her employer's
legitimate expectations at the time of the adverse action; and
(4) the adverse action occurred under circumstances that raise a
reasonable inference of unlawful discrimination.  See Sempowich
v. Tactile Sys. Tech., Inc., 19 F.4th 643, 649-50 (4th Cir.
2021).

    Ms. Merriweather fails to establish the elements of a
prima-facie claim with two of her three racial discrimination
allegations:  (1) Mr. Smith's alleged favoritism during the
application process and (2) his alleged disproportionate
assignment of claims.  The court will, therefore, address those
allegations together before turning to the final allegation of
racial discrimination:  the failure-to-promote.

          a.   ***Application Process and Assignment of Job Duties***

    As to the allegations of disparate treatment during the
application process and in the assignment of claims, the SSA
argues that Ms. Merriweather fails to establish the "adverse
employment action" element of a prima-facie claim of racial
discrimination.

    The adverse-employment-action element is generally
satisfied only when an employment action "inflicts direct
economic harm."  Vedula v. Azar, No. TDC-18-0386, 2020 WL

5500279, at *7 (D. Md. Sept. 11, 2020) (quoting Burlington
Indus., Inc. v. Ellerth, 524 U.S. 742, 762 (1998)).  In any
event, an adverse employment action must "adversely affect[] the
terms, conditions, or benefits of the plaintiff's employment."
Cole v. Wake Cty. Bd. of Educ., 834 F. App'x 820, 821 (4th Cir.
2021) (quoting Holland, 487 F.3d at 219).  Examples of adverse
employment actions include "decrease in compensation, job title,
level of responsibility, or opportunity for promotion."  Id.
(quoting James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 376
(4th Cir. 2004)).

    This element is not satisfied by immaterial or trivial
employment actions:  "The requirement of an adverse employment
action seeks to differentiate those harms that work a
significant detriment on employees from those that are
relatively insubstantial or trivial."  Jones v. Constellation
Energy Projects and Servs. Grp., Inc., 629 F. App'x 466, 468
(4th Cir. 2015) (quoting Adams v. Anne Arundel Cty. Pub. Sch.,
789 F.3d 422, 431 (4th Cir. 2015)).  "Thus, the plaintiff must
demonstrate 'a significant change in employment status, such as
hiring, firing, failing to promote, reassignment with
significantly different responsibilities, or a decision causing
a significant change in benefits.'"  Id. (quoting Hoyle v.
Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011)).

26

For example, this element is not satisfied where employees (1) "offer[] no evidence that [they were] denied a promotion, bonus or any other similar employment opportunity" as a result of the allegedly discriminatory conduct, Johnson v. Danzig, No. 99-2614, 2000 WL 458887, at *1 (4th Cir. Apr. 24, 2000) (per curium), (2) do not demonstrate how the allegedly discriminatory conduct "changed [their] employment status or . . . compensation[,]" Jones, 629 F. App'x at 468, or (3) "fail[] to allege that [they] received lower pay, [were] demoted, [were] passed over for a promotion, failed to receive a bonus, or given significantly different responsibilities . . . [,]" Jensen-Graf v. Chesapeake Emp'rs Ins. Co., 616 F. App'x 596, 598 (4th Cir. 2015) (per curium).

In this case, the SSA argues that Ms. Merriweather does not establish this element with her allegations related to the application process because she fails to show how Mr. Smith's alleged conduct affected her chances of being promoted, and thus fails to show that his conduct affected the "terms, conditions, or benefits" of her employment.  The court agrees.

First, the SSA points out that Ms. Merriweather undisputedly submitted her form well before the deadline after receiving help from Ms. Mann, an SSA official holding the same position as Mr. Smith.  The SSA, therefore, contends that the timeliness or quality of Ms. Merriweather's form did not suffer.

Also showing that the SSA-45 form did not affect Ms. Merriweather's chances of being promoted, the SSA offers Ms. Groom's testimony that she had independent knowledge of Ms. Merriweather's and Ms. Blankenship's work performance and selected Ms. Blankenship based on that independent knowledge. See ECF No. 55-3 at 9, ¶ 7.

In response, Ms. Merriweather, instead of showing how the terms, condition, or benefits of her employment were affected, argues that preferential treatment alone is enough to satisfy the adverse-employment-action element:  "[Even if] the quality of [Ms. Merriweather's] [SSA-45] did not suffer because of the lack of help she received from Mr. Smith . . . the quality of the end product is irrelevant, as Mr. Smith still gave Ms. Blankenship preferential treatment . . . ."  ECF No. 57 at 8.

Ms. Merriweather is mistaken; preferential treatment alone does not satisfy this element.  "The key question is whether the employer's disputed action had 'a tangible effect on the terms or conditions of employment.'"  Foresyth v. Wormuth, No. 21-2000, 2023 WL 5317958, at *2 (4th Cir. Aug. 18, 2023) (per curium) (quoting Booz-Allen & Hamilton, Inc., 368 F.3d. at 377). Without showing how her chances of being promoted were diminished, she fails to establish a prima-facie claim with this allegation.

Similarly, the SSA argues that Ms. Merriweather fails to establish that the disproportionate assignment of claims affected the terms, conditions, or benefits of her employment. And again, the court agrees.

It is well established that "[a]dditional duties typically do not constitute adverse employment actions unless they are so weighty as effectively to change the[] basic terms of employment." Staggers v. Becerra, No. ELH-21-0231, 2021 WL 5989212, at *16 (D. Md. Dec. 17, 2021) (cleaned up) (quoting Vedula, TDC-18-0386, 2020 WL 5500279, at *9). If such actions constituted an actionable adverse employment action, "work would grind to a halt [because] every employee saddled with a new task or project could sue under Title VII." Id. (citing Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985)). For this reason, courts in this circuit have concluded that (1) "to the extent [an employee] is complaining about being assigned additional work, such a claim does not constitute an adverse employment action[,]" McKenzie-El v. Am. Sugar Refinery, Inc., No. RDB-20-0917, 2020 WL 7489021, at *6 (D. Md. Dec. 21, 2020) (citing Peters v. Wal-Mart Stores E., LP, 512 F. App'x 622, 627 (7th Cir. 2013)), and (2) that more work assignments do not constitute adverse employment actions when an employee "does not explain how this extra work altered the 'terms, conditions or

benefits' of [her] employment[,]'" <u>Johnson v. Aluminum Co. of</u>
<u>Am.,</u> 397 F. Supp.2d 688, 697 (M.D.N.C. 2005).

Ms. Merriweather's bald assertion that Mr. Smith assigned
her more claims than other employees on one occasion does not
establish an adverse employment action without showing how it
altered the terms, conditions, or benefits of her employment.
She produces nothing to show that. She, therefore, fails to
establish a prima-facie claim with this allegation, too.

With these allegations of racial discrimination foreclosed,
the court turns now to Ms. Merriweather's final allegation of
racial discrimination: the failure-to-promote.

**b.** *Failure-to-Promote*

Unlike Ms. Merriweather's other allegations, she
establishes a prima-facie claim of racial discrimination with
her failure-to-promote allegation.

The elements needed to establish a prima-facie case of
discriminatory failure-to-promote differ in that the employee
need not prove an adverse employment action; that element is
satisfied by virtue of being denied the promotion. Instead, a
plaintiff must prove that "(1) she is a member of a protected
class; (2) she applied for the position in question; (3) she was
qualified for the position; and (4) she was rejected for the
position under circumstances giving rise to an inference of
discrimination." <u>Johnson v. City of Charlotte</u>, 229 F. Supp.2d

30

488, 491 (W.D.N.C. 2002) (citing Carter v. Ball, 33 F.3d 450 (4th Cir. 1994)).

Ms. Merriweather puts forth prima-facie evidence of these elements, which is a "relatively easy task[.]" Evans, 80 F.3d at 959.  The parties do not dispute that her race qualifies as a protected class, that she applied for the position, or that she was qualified for it.  Ms. Merriweather also satisfies the final element of a prima-facie claim because she offers evidence that Ms. Groom selected a white candidate for the position over her: "An African-American [fe]male may prove the fourth element by showing that the employer rejected [her] application for promotion and filled the job with a white [fe]male."  Cherry v. Elizabeth City State Univ., 147 F. Supp.3d 414, 423 (E.D.N.C. Nov. 2, 2015) (citing Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994)).

Because Ms. Merriweather establishes a prima-facie claim, the burden shifts to the SSA to "articulate some legitimate, nondiscriminatory reason for [Ms. Merriweather's] rejection." McDonnell Douglas Corp., 411 U.S. at 802.  The SSA easily satisfies this burden.

While Ms. Merriweather complains of the alleged disparate treatment she received from Mr. Smith during the application process, the promotion decision undisputedly rested with Ms. Groom.  The SSA offers testimonial and documentary evidence that

31

Ms. Groom made her decision for non-discriminatory reasons and that the decision was independent of any potential racial bias.

When making the decision, Ms. Groom had before her Ms. Merriweather's and Ms. Blankenship's SSA-45 forms and Mr. Smith's Assessment and Recommendation forms for each of them. As discussed above, Ms. Merriweather does not allege or offer evidence that the quality of her SSA-45 form suffered without Mr. Smith's help; it is a standardized resume that she had proofed and edited by Mr. Smith's equivalent.

She does, however, offer evidence that the Assessment and Recommendation forms offered a favorable recommendation for Ms. Blankenship but not her.  This could have possibly impacted Ms. Groom's hiring decision, so it is important to consider whether the SSA articulates a legitimate, non-discriminatory reason for (1) Mr. Smith's recommendation, and (2) Ms. Groom's ultimate hiring decision.  It does both.

In Mr. Smith's Assessment and Recommendation forms, he justified his recommendations by explaining that Ms. Blankenship could handle most complex Title II claims independently, but that Ms. Merriweather "still needs assistance with the more complicated workloads."  ECF No. 55-2.  Consequently, he believed Ms. Blankenship was fit for the Claims Technical Expert position but Ms. Merriweather was not.

Notably, Ms. Merriweather concedes that Mr. Smith's
assessment is "entirely consistent" with an annual evaluation of
her job performance he provided nearly a year before the Claims
Technical Expert vacancy arose.  See ECF No. 57-1 at ¶ 38.  In
that annual evaluation, Mr. Smith similarly stated that Ms.
Merriweather made successful contributions to the office but
that she "require[s] assistance in analyzing some required
workloads."  ECF No. 55-2 at 6.  Also corroborating Mr. Smith's
justifications for his recommendations, the SSA offers Ms.
Groom's testimony that "[b]ased on [her] own knowledge and
experience with the candidates, [she] concurred with Mr. Smith's
recommendations . . . ."  ECF No. 55-3 at 2, ¶ 7.

With this evidence, the SSA articulates a legitimate, non-
discriminatory reason for Mr. Smith's recommendations to Ms.
Groom.

The SSA also articulates a legitimate, non-discriminatory
reason for Ms. Groom's ultimate hiring decision.  It offers her
testimony that based on her independent experience with the
candidates she would not have selected Ms. Merriweather for the
promotion even if Mr. Smith had highly recommended her:

> Ms. Merriweather did not have the job
> knowledge or leadership and time-management
> skills needed for the position.
> Additionally, she often sought assistance
> with her more complicated workloads, rather
> than trying to research the issues herself.
> In comparison, Ms. Blankenship had solid

33

> technical knowledge, was the "go to" person
> for Title XVI questions, and assisted
> management in meeting office priorities.
> Thus, even if Mr. Smith had highly
> recommended Ms. Merriweather, I still would
> not have selected her for the position.

Id.  This is evidence that Ms. Groom's decision was removed from

any potential bias injected by Mr. Smith, and Ms. Merriweather

alleges no racial animus on Ms. Groom's part.  The SSA,

therefore, articulates a legitimate, non-discriminatory reason

for not promoting Ms. Merriweather.

Because the SSA has satisfied its burden of proving non-

discriminatory reasons for the hiring decision, the final burden

under the McDonnell Douglas framework "shifts back to [Ms.

Merriweather] to show that the [SSA's] explanation was 'actually

a pretext for discrimination.'"  Sempowich, 19 F.4th at 650

(quoting Lettieri v. Equant, 478 F.3d 640, 646 (4th Cir. 2007)).

Ms. Merriweather can satisfy this burden "by showing either that

the [SSA's] explanation is not credible, or that [its] decision

was more likely the result of [discrimination]."  Adkins v. CSX

Transp., Inc., 70 F.4th 785, 793 (4th Cir. 2023) (quoting Sharif

v. United Airlines, Inc., 841 F.3d 199, 203 (4th Cir. 2016)).

Ms. Merriweather again fails to carry her burden of

production.  She neither discredits the SSA's non-discriminatory

explanation for selecting Ms. Blankenship for the promotion nor

offers any proof that the decision was more likely the result of discrimination.

Instead, she argues that Ms. Groom's testimony contradicts a prior email she sent and that "[t]his contradiction creates a genuine issue of fact as to Groom's real reasoning":

> [T]he affidavit offered by Groom in support of [the SSA's motion] is contradicted by Groom's previous email in the ROI in response to an email in which [Ms. Merriweather] specifically asked for where she felt [sic] short, and Groom did not provide the reasoning in [her current testimony], instead providing a description of the job. . . . This contradiction creates a genuine issue of fact as to Groom's real reasoning.

ECF No. 57 at 10.  This argument mischaracterizes Ms. Groom's "previous email" and is another effort by Ms. Merriweather to carry her burden of production through pure speculation.

First, Ms. Merriweather provides an incomplete picture of Ms. Groom's "previous email."  Ms. Groom sent the email in response to an email from Ms. Merriweather requesting information about what she could improve upon should she apply for the position in the future:

> Good morning,
>
> Sam announced to us yesterday, that Kellie is the new title 16 TE for the office and that she got the position.  I would like to know where I fell short at [sic] for the position, so I will know what I need to improve on for the next go around[.]

35

Thanks[.]

ECF No. 57-3 at 15. In response to this inquiry, Ms. Groom provided Ms. Merriweather with a description of the job, presumably so that Ms. Merriweather would know what qualities to "improve on for the next go around":

> Hello Carlisa,
>
> Thanks for the question. The CTE position is a technical position that requires a person to be self-motivated, able to make independent decisions, research and process complex cases, and serve as a lead role in technical training/mentoring . . . .

Id. Ms. Groom's completely objective email of the job description does not contradict her later testimony explaining why she found Ms. Blankenship more qualified for the position.

Second, the court rejects Ms. Merriweather's argument that discovering Ms. Groom's conjectural "real reasoning" presents a genuine issue of material fact for trial. Ms. Merriweather produces no evidence that Ms. Groom based her decision on race. That her decision was racially motivated is especially unlikely given that Ms. Groom is also African American. What's more, speculation is not evidence, and without evidence of racial discrimination, the court has an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." Drewitt v. Pratt, 999 F.2d 774, 778-79 (1993) (cleaned up) (quoting Felty v. Graves-Humphreys Co., 818

36

F.2d 1126, 1128 (4th Cir. 1987)).  The court, therefore, rejects this argument, and Ms. Merriweather fails to carry her burden under the McDonell Doulas framework.

For these reasons, the court grants summary judgment for the SSA on Ms. Merriweather's racial-discrimination claim.

### 3.   *Count III:  Disability Discrimination*

Ms. Merriweather incorporates the same allegations into her disability-discrimination claim as she did for her other discrimination claims.  She also brings this claim under the same Act:  Title VII.  See ECF No. 23 at ¶ 82-89.  However, "[d]isability is not a protected class under Title VII, which only protects employment discrimination based on "race, color, religion, sex, or national origin[.]"  Schmidt v. Town of Cheverly, 212 F. Supp.3d 573, 580 (D. Md. 2016) (quoting 42 U.S.C. § 2000e-2).

Because disability is not a protected class under Title VII, the SSA moves to dismiss this claim under Rule 12(b)(1), arguing that the court lacks subject-matter jurisdiction.  In response, Ms. Merriweather asks the court to consider this claim under the Rehabilitation Act, 29 U.S.C. § 701 et seq., arguing that her citation in the complaint to Title VII "is, of course, simply a scrivener's error, and equity should permit the claims based on disability to go forward."  ECF No. 57 at 6.

While this mistake is rather careless, "[t]he Federal Rules of Civil Procedure 'do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.'" Stanton v. Elliott, 25 F.4th 227, 237-38 (4th Cir. 2022) (quoting Johnson v. City of Shelby, 574 U.S. 10, 11, (2014)). Under this rationale, "[p]laintiffs need not put a claim under a special heading, quote the statute, or use magic words to make out a claim[,] [and] [c]ourts should focus on the substance of the allegations to avoid making pleading a formalistic headache." Id. (citing Stevenson v. City of Seat Pleasant, 743 F.3d 411, 418 (4th Cir. 2014)).

The court, therefore, will look to the substance of Ms. Merriweather's claim and consider it as a claim brought under the Rehabilitation Act, which includes disability as a protected classification. See 29 U.S.C. § 794. Even so, the court can readily grant summary judgment on this claim.

Rehabilitation-Act claims, as with claims brought under Title VII, may be established using the McDonnell Douglas burden-shifting framework in the absence of direct evidence of discrimination. See, e.g., Jennings v. Frostburg State Univ., No. ELH-21-656, 2023 WL 4567976, at *14 (D. Md. June 27, 2023) (citing Hannah P. v. Coats, 916 F.3d 327, 342 (4th Cir. 2019)). Again, the first step under the McDonell Douglas framework is to establish a prima-facie claim of disability discrimination. See

id. at *15.  A plaintiff establishes a prima-facie case with
evidence that "(1) she is disabled; (2) she was otherwise
qualified for the position; and (3) she suffered an adverse
employment action solely on the basis of the disability."  Perry
v. Comput. Scis. Corp., 429 F. App'x, 218, 220 (4th Cir. 2011)
(per curium) (citing Constantine v. Rectors & Visitors of George
Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005)).

     Since, in a prior order, this court dismissed claims
arising from Ms. Merriweather's "reasonable accommodation"
allegation, her only remaining allegations related to her
disabilities are (1) an allegation listing her various physical
disabilities, see ECF No. 23 at ¶ 28, and (2) an allegation that
she "is a qualified individual with a disability[,]" id. at ¶
30.  She offers no allegation or evidence showing that her
disability contributed to any of her alleged disparate
treatment.

     Tellingly, in an affidavit given during the administrative
investigation, Ms. Merriweather gave sworn statements that "I
don't believe my medical condition was a factor [in not being
provided time to complete the SSA-45 form]," ECF No. 55-7 at 5,
¶ 32, and that "I don't believe disability was a factor [in
being denied the promotion][,]" id. at 10, ¶ 50.

     Similarly, at her deposition in this ensuing civil action,
she merely speculated that her disability contributed to her

alleged disparate treatment by Mr. Smith and in the failure-to-promote, and she conceded that she had no evidence that her disabilities contributed to her non-selection:

> Q. Why do you believe that disability was a factor in the selection process?
>
> A. What do you mean?
>
> Q. Well, you're claiming that part of the reason you were not selected was because of your disability or disabilities, and I'm asking you what role the disabilities played into it. Why do you think you weren't selected because of that?
>
> A. Because I feel like maybe I wasn't selected due to my disabilities and sometimes I have trouble walking and things like that. Maybe he felt like --- I feel like maybe he felt that I wouldn't be able to do the position, to do the job.
>
> Q. Did you ever hear anything to that effect?
>
> A. No, not that I can recall.
>
> Q. Did you see anything written to that effect?
>
> A. No, not that I recall.

ECF No. 55-1 at 23.  Ms. Merriweather's "feeling" that her disabilities contributed to her non-selection does not establish a prima-facie case of disability discrimination and cannot avoid summary judgment; "[u]nsupported speculation is not sufficient to defeat a summary judgment motion."  <u>Smith v. Schlage Lock</u>

_Co., LLC_, 986 F.3d 482, 486 (4th Cir. 2021) (quoting _CTB, Inc. v. Hog Slat, Inc._, 954 F.3d 647, 659 (4th Cir. 2020)).

Likewise, she produces no evidence that her disabilities contributed to Mr. Smith allegedly assigning her disproportionate claims:

> Q. Do you think that disability was a reason why you were assigned five claims that day?
>
> A. I'm not sure.

ECF No. 55-1 at 25.  This unsupported allegation of disability discrimination also does not present a genuine issue of material fact for trial.

Because Ms. Merriweather produces no evidence in support of her disability discrimination claim, the court grants summary judgment for the SSA on this count as well.

### 4.  **Count IV:** _Reprisal_

Finally, Ms. Merriweather alleges a reprisal claim based on the same factual allegations as her other claims.  She contends that Mr. Smith subjected her to the alleged discrimination because she participated in an EEO case against him in 2015 and "in an office wide claim of harassment" against him in 2016. _See_ ECF No. 23 at ¶¶ 23-24.

The SSA moves for summary judgment on this claim, arguing that Ms. Merriweather presents no evidence that Mr. Smith knew of her participation in those proceedings and that, regardless,

her alleged participation is too remote from her 2019 disparate treatment allegations to support a reprisal claim.

Ms. Merriweather does not respond to the SSA's motion for summary judgment on this claim.  See ECF No. 57.  This is a concession that she lacks evidence to support her claim:  "[A] plaintiff's failure to respond to a summary judgment motion constitutes waiver or abandonment of a claim."  King v. Strata Solar, LLC, No. 2:21-CV-00595, 2022 WL 2110688, at *2 (E.D. Va. Jun. 10, 2022) (quoting Orbit Corp v. Fedex Ground Package Sys., Inc., No. 2:14CV607, 2016 WL 6609184, at *15 (E.D. Va. Nov. 8, 2016)).  Even if she did not abandon the claim, she fails to establish a prima-facie claim.

In the absence of direct evidence of reprisal, a plaintiff may establish a reprisal claim using the McDonnell Douglas burden-shifting framework.  See Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 122 (4th Cir. 2021).  In this case, Ms. Merriweather presents no direct evidence of reprisal and must rely on the burden-shifting framework, which first requires her to establish a prima-facie claim.

To establish a prima-facie claim she must prove that "[s]he 'engaged in protected activity,' that [her] employer 'took an adverse action against [her],' and that 'a causal relationship existed between the protected activity and the adverse employment activity.'"  Id. (quoting Foster v. Univ. of Maryland

42

– E. Shore, 787 F.3d 243, 250 (4th Cir. 2015)).  To establish
that "causal relationship," a plaintiff must show that her
employer "took the adverse action because of the protected
activity."  Id. (quoting Bryant v. Aiken Reg'l Med. Ctrs., Inc.,
333 F.3d 536, 543 (4th Cir. 2003)).  This generally requires an
employer to take the "adverse employment action against an
employee shortly after learning of the protected activity."  Id.
(quoting Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004)).
The requirement that adverse employment action occur "shortly"
after the protected activity is known as the "temporal
proximity" requirement.  Id.  This requirement is relatively
stringent.

For example, a period of a few months between the adverse
employment action and the protected activity is too attenuated:

> [F]or temporal proximity, courts within our
> Circuit have found that shorter lapses of
> time similar to the three-month period at
> issue in the case before us are insufficient
> to infer a causal relationship without other
> evidence of a causal link.

Id. at 127 (citing King v. Pulaski Cty. Sch. Bd., 195 F. Supp.
3d 873, 886 (W.D. Va. 2016)).

If a matter of a few months is too attenuated to establish
the causal link, so too are the years between Ms. Merriweather's
alleged participation in the protected activities and her

alleged adverse employment actions.  She offers no other evidence that would establish the causal link.

Ms. Merriweather, therefore, fails to establish a prima-facie reprisal claim, and there is no genuine issue of material fact for trial.

## IV.  Conclusion

For the above reasons, the SSA's motion to dismiss and for summary judgment (ECF No. 55) is **GRANTED.**  The SSA's motion to exceed the page limit (ECF No. 56) for its brief is also **GRANTED.**  The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED** this 1st day of December, 2023.

ENTER:

David A. Faber
Senior United States District Judge